MARINE GRAIN & STOCK EXCHANGE *v.* WESTERN UNION TEL. Co. and another.

*(Circuit Court, N. D. Illinois.    October 13, 1884.)*

CHICAGO BOARD OF TRADE—DISTRIBUTION OF REPORTS BY TELEGRAPH.
   The Chicago board of trade has the right to decide to what persons besides its own members the telegraphic reports of its dealings, collected by its own employes, shall be distributed.

In Equity.
*Bisbee, Ahrens & Decker*, for complainant.
*Williams & Thompson*, for defendants.

BLODGETT, J.    The bill in this case was filed for the purpose of obtaining an injunction for restraining the defendants from breaking the connection of the telegraph wires under their control with certain instruments and tickers in the office of complainant; the principal allegations being that complainant is a corporation, duly organized under the laws of Illinois, for the purpose of dealing in grain, etc., and carrying on a brokerage and commission business in this city in such commodities, and is now engaged in such business; that

the defendants own and control lines of telegraph in and between the principal cities of the United States, and especially in the city of Chicago; that defendants have placed in complainant's office certain telegraph instruments and tickers connected with their main wires, whereby reports of the market prices of grain, provisions, stocks, etc., on the Chicago board of trade, and in other cities and markets, are, from time to time, transmitted to complainant's said office, for which complainant has paid and is still willing to pay the customary and reasonable rates; that defendants have, without any right to do so, given notice of their intention to sever the connection of their wires with the tickers and instruments in complainant's office, and will do so unless restrained by order of this court, whereby complainant would suffer irreparable damage in its business.

On filing this bill in the state court an *ex parte* injunction, according to the prayer of the bill, was issued, which defendants here move to dissolve. Affidavits filed in support of the motion show that for some time prior to the first of May last the board of trade of this city had permitted the agents and employes of defendants to attend its daily sessions, and collect and transmit reports of prices and other information of interest to persons dealing in or desiring to deal in such commodities as are usually dealt in on the board of trade, and that, while defendants were so conducting such business of collecting and transmitting market reports, the tickers and instruments in question were placed in the office now occupied by complainant, but long before complainant occupied such office or was engaged in business there. When the instruments and tickers were placed there, one White occupied said office and did business there; that White left the office and one Martin became the occupant thereof, and that, under some agreement or arrangement, Martin has ceased to do business, and complainant claims to be his successor in business, and to succeed to all the rights enjoyed by the previous occupants of the office; that since the first of May last the reporters and agents of the defendants have been excluded from the board of trade, and the market reports and prices on the board are now collected and compiled solely by the agents of the board, by whom they are transmitted to defendant, with directions to transmit such reports to such persons, and only such persons, as are designated by the board of trade; and that, in pursuance of such new arrangement, the telegraph company claims not to own the intelligence which is collected upon the board of trade, and submits that the same belongs to the board for dissemination as the board shall direct.

The board of trade of this city is a mere association of persons for their own convenience, who deal mainly as brokers and commission merchants in grain and the other products of the country seeking a market at Chicago. Their franchise as a corporation allows them to hold a limited amount of property, and to prescribe rules and by-laws for the government of the members and the transaction

of business between them.    Their sessions are not required to be public, and nothing is stated in this bill showing or tending to show why persons, not members of the board, have any right to be informed as to prices or the extent of dealings at the sessions of the board.

I deem it sufficient for the purposes of this motion to say that this court has heretofore decided, in cases which seem to me entirely analogous to this in principle, that the board has control of its own floor, and can admit such persons as it sees fit; that it can make its transactions wholly secret, and keep them within the knowledge of its own members, or make them public so far, and only so far, as the board itself, or its members may see fit to do so.    A membership of the board is expensive, and an admission to membership is wholly within the discretion of the proper officers of the association.    Information as to the condition of the demand and prices for commodities dealt in on the board in other markets is collected and announced among the members of the board during the daily sessions of its members, and this information, together with reports of prices and dealings between the members at these sessions, if given as a matter of right to any one demanding the same, would give to persons not members nearly if not quite all the advantages of membership without the attendant expense and responsibility.    Being made up of sellers and buyers representing producers and consumers all over the country, there can be no danger but what abundant intelligence as to prices and transactions on the board will be widely published, and made part of the current every-day news; but it is not this kind of information that the complainant wishes.    What it demands as a matter of right in the name of the public is instantaneous notice by telegraph of all change of prices on the board, which can only be wanted for the purpose of conducting the operations of the complainant outside the board.    The people at large cannot, in the nature of things, have any more interest in the success of complainant's business than in that of any other broker or commission dealer; and the demand by complainant that it shall be offered by the board the facilities for business which others only get through their membership of the board seems to me wholly unwarranted.    I cannot, therefore, see that any consideration of public policy should deny to the board the right to decide to whom the reports of its dealings, collected by its own employes, shall be distributed.

For these reasons, and others more fully stated in preceding cases, the injunction is dissolved.

See *Metropolitan Grain & Stock Exchange* v. *Chicago Board of Trade*, 15 FED. REP. 847; *Bryant* v. *W. U. Tel. Co.* 17 FED. REP. 825, and note, 826. —[ED.